## CONLEY v. BALLINGER, SECRETARY OF THE INTERIOR.[1]

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 77.   Argued January 14, 1910.—Decided January 31, 1910.

There is no question as to the complete legislative power of the United States over the land of the Wyandotte Indians while it remained in their occupation, and parcels excepted from the general distribution under the treaty of 1855 continued under such legislative control for the benefit of the tribe.

While the United States maintains and protects Indian use of land and its occupation against others it is bound itself only by honor and not by law, and it will not be presumed to have abandoned at any time its attitude of protection towards its wards.   Nor is its good faith broken by any change in disposition of property believed by Congress to be for the welfare of the Indians.

Even if a suit to enjoin disposition of property reserved by the treaty of 1855 with the Wyandottes for cemetery use is not a suit against the United States, a descendant of an Indian buried in such cemetery cannot maintain such an action to enjoin the disposition of the reserved property in accordance with an act of Congress.

In view of the circumstances of this case it is proper to dismiss the bill without costs under the provisions of the act of March 3, 1875, c. 137, § 5.

---

[1] Docket title originally: Lyda B. Conley, Appellant, v. James R. Garfield, Secretary of Interior, Appellee.   January 14, 1910, on suggestion of resignation of appellee and appointment of Richard A. Ballinger, substitution of latter ordered as party appellee.

THE facts are stated in the opinion.

*Lyda B. Conley,* appellant, *pro se.:*

The Circuit Court in dismissing the bill for want of jurisdiction with costs erred. If it has not jurisdiction it cannot give costs. 2 Bates' Fed. Eq. Pro. 873; *Inglee v. Coolidge,* 2 Wheat. 363; *Hornthall* v. *Keary,* 9 Wall. 566; *Blacklock* v. *Small,* 127 U. S. 96; May's U. S. Sup. Ct. Prac. 5; *Mayor* v. *Cooper,* 6 Wall. 247.

The Circuit Court has jurisdiction to enjoin the acts of individuals who invade constitutional rights under color of an unconstitutional act of Congress. Cooley's Const. Lim., 7th ed., 28; May's Prac. 102; *Tindel .v. Wesley,* 167 U. S. 213; Cooley's Torts, 2d ed., 830; Black's Const. Law, 131, 417; Century Digest, under Courts, §.844½; Cooley's Principles, 136, 345; Sutherland's Notes, 78, 644; *Poindexter* v. *Greenhow,* 114 U. S. 273, 297; *Camp* v. *Holt,* 115 U..S. 620; *Board of Education* v. *Blodgett,* 115 Illinois, 441; *Eaton* v. *Railroad Co.,* 51 N. H. 504; Ordronaux on Legislation, 254; *Murray* v. *Hoboken Land Co.,* 18 How. 277; *Lowe* v. *Kansas,* 163 U. S. 85; *Lasere* v. *Rochereau,* 17 Wall. 438; *Orchard* v. *Alexander,* 157 U. S. 373; *State* v. *Tulow,* 129 Missouri, 163; Works' Courts & Jurisdiction; 1 Desty's Fed. Procedure, 9th ed., 42; *Leeper v. Texas,* 139 U. S. 462; *Union Trust Co.* v. *Stearns,* 119 Fed. Rep. 794.

The Circuit Court erred in holding that it did not have jurisdiction because only rights of persons and property and not political rights are subjects of judicial power. Judicial power covers every legislative act of Congress whether within or beyond its legislative power. *Ableman* v. *Booth,* 21 How. 506, 520; *Fifth Nat. Bank* v. *Long,* 7 Biss. 502; *Elliott* v. *Van Vorst,* 3 Wall., Jr., 299; *Cunningham-v. Macon &c. R. R.,* 109 U. S. 446, 451; *Union Trust Co.* v. *Stearns,* 119 Fed. Rep. 793; Field's Fed. Courts, 113; *Osborn* v. *Bank,* 9 Wheat. 738; *Poindexter* v. *Greenhow,* 114 U. S. 291; *Smyth* v. *Ames,* 169 U. S. 518; Webster's Citizenship, 47; *Blair* v. *Silver Peak Mines,* 93 Fed. Rep. 335; Sutherland's Notes, defining citizenship, 569

and 610; *United States* v. *Cruikshank*, 92 U. S. 542; Story's
Comm., § 1693; Cooley's Principles, 31, 163, 269, 367; 27 Century Digest, 150; Ordronaux, 478; Kansas Bill of Rights,
Art. I, § 1; *Rison* v. *Farr*, 24 Arkansas, 168; Wells' Jurisdiction of Courts, 3; Cooley's Const. Lim., 7th ed., 131; Potter's
Dwarris, 65, 351; Brown's Leg. Max. 34.

Treaty stipulations are subjects of judicial cognizance, and
Congress cannot annul titles under treaties by subsequent
legislation repealing the treaty. Sutherland's Notes, 484;
*Chirac* v. *Chirac*, 2 Wheat. 277; *Reichart* v. *Felps*, 6 Wall. 166;
*Wilson* v. *Wall*, 6 Wall. 83; Brown on Jurisdiction, 2d ed., 6,
86; Black's Const. Law, 50.

The question of jurisdiction does not depend on truth or
falsity of the charge but upon the nature of it, and is determinable at the commencement and not at the conclusion of
the inquiry.    Brown's Constitutional Inquiries, 65; *Dartmouth
College Case*, 4 Wheat. 519.

The judiciary is the only department of the Government to
construe a treaty or statute.   1 Butler's Treaty Power, 145;
*Society* v. *New Haven*, 8 Wheat. 464; 4 Fed. Stat. Ann. 281,
and cases cited under Rev. Stat., § 629.

The Circuit Court had jurisdiction because this case arises
under the Constitution and laws of the United States and the
chancery court has jurisdiction of cases of charitable uses independent of the statute of 43 Elizabeth, Chap. 4; Tiedeman,
Real Property, 906; Carter's Jurisdiction of Fed. Courts, 8;
1 Desty's Fed. Proc., 9th ed. 365; *Osborne* v. *Bank*, 9 Wheat.
818, 870; *Marbury* v. *Madison*, 1 Cranch, 137; Cooley's Principles, 31, 126; *Ableman* v. *Booth*, 21 How. 519; Black's Const.
Law, 118; *Tennessee* v. *Davis*, 100 U. S. 257; Cooley's Const.
Lim. 29; *Sawyer* v. *Concordia*, 12 Fed. Rep. 754; 1 Kent, 14th
ed., 322; *United States* v. *Arredondo*, 6 Pet. 691, 738; Works on
Jurisdiction, 430; *West. Un. Tel. Co.* v. *Andrews*, 154 Fed. Rep.
95; *Matter of Young*, 209 U. S. 123, 144; Sutherland's Notes,
481; 13 Century Digest, 540, cases under "Treaties"; 9 Fed.
Stat. Ann. 34; *Head Money Cases*, 112 U. S. 598; 1 Bouvier's

Law Dict. 311; Ordronaux, 627; 2 Story's Eq. Jurisdiction, 12th ed., §§ 1171a, 1177; *Good* v. *McPherson*, 51 Missouri, 126; 2 Pingrey on Real Property, 1083; 2 Beach on Injunction, 1154; *Cincinnati* v. *White*, 6 Pet. 431; *Hunter* v. *Sandy Hill*, 6 Hill, 407; *Beatty* v. *Kurtz*, 2 Pet. 585; 1 Foster's Fed. Prac., 3d ed., 452; 13 Century Digest, §§ 797, 844; Black's Const. Prohibitions, 20.

Appellant shows by the cases cited that this case is not one against the United States; that the act of Congress involved interferes with her vested rights to her irreparable injury without due process of law and is not a proper exercise of legislative power under the Fifth Amendment to the Constitution; that Congress cannot interfere with vested rights under treaties and has no power to nullify titles confirmed many years before by the Government's authorized agents and that charitable uses are protected by the courts as required by equity and good conscience, and the court has jurisdiction to and should award the relief prayed for.

*The Solicitor General* and *Mr. Barton Corneau* for appellees, submitted:

The lower court was without jurisdiction as $2,000 was not involved and the act of February 6, 1901, 31 Stat. 760, authorizing suits by Indian allottees does not apply—and furthermore the suit is one really against the United States. *Naganab* v. *Hitchcock*, 202 U. S. 473; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Minnesota* v. *Hitchcock*, 185 U. S. 373; *Louisiana* v. *Garfield*, 211 U. S. 70.

It was not the purpose of the Treaty of 1855 in reserving this land as a public burying ground to create in appellant or other members of the former Wyandotte Tribe individual rights, legal or equitable, in the land. The United States took the land free at any rate from more than a mere moral obligation, which the act of June 21, 1906, amply meets. *Fleming* v. *McCurtain*, 215 U. S. 56.

The United States had the full right to administer, and in

the course of such administration to alter the use or applica-
tion of the Indian tribal property, during the continuance of
the tribal existence. It is not to be supposed that the Treaty
of 1855, in making the cemetery reservation, contemplated a
surrender of this power of the United States over the land after
the tribe had been dissolved. *Lone Wolf* v. *Hitchcock,* 187
U. S. 553.

The Wyandotte tribal authorities undoubtedly had power
to terminate the use of this burial ground at its pleasure. By
the cession the United States would have acquired like power,
even if it had not possessed it already.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity to enjoin the Secretary of the Interior
and Commissioners appointed by him from selling or disturb-
ing an Indian cemetery. The bill was demurred to on the
grounds, among others, that the matter in dispute was not
alleged to exceed the value of two thousand dollars, and that
the suit was a suit against the United States. The bill was
dismissed for want of jurisdiction and an appeal was taken to
this court.

The substance of the bill is as follows: The plaintiff is a
citizen of the State of Kansas and of the United States and a
descendant of Wyandotte Indians dealt with in the Treaty of
January 31, 1855. 10 Stat. 1159. By Article 1 of that treaty
the tribe of the Wyandottes was to be dissolved on the ratifi-
cation of the treaty and the members made citizens of the
United States, with exemption for a limited time of such as
should apply for it. By Article 2 the Wyandotte Nation ceded
their land to the United States for subdivision in severalty to
the members, "except as follows, viz., The portion now en-
closed and used as a public burying ground, shall be perma-
nently reserved and appropriated for that purpose;" &c. The
plaintiff's parents and sister are buried in this ground, and she
alleges that she "has seizin, and a legal estate and vested

rights in and to" the same, and that although the land is worth $75,000, there is no standard by which to estimate the value of her rights. (It is set forth further that by a treaty of February 23, 1867, with the Senecas and others, Art. 13, 15 Stat. 513, 516, a portion of the Wyandottes were allowed to begin anew a tribal existence; but the bearing of this treaty upon the case does not appear.) The defendants are intending and threatening to remove the remains of persons buried as above to another designated place and to sell the burying ground; the proceeds after certain deductions to be paid to parties to the Treaty of 1855, or their representatives, in accordance with the Act of Congress of June 21, 1906, c. 3504. 34 Stat. 325, 348. This act is alleged to violate the constitutional rights of the plaintiff and to be void.

The record shows that the court left it open to the plaintiff to amend so as to avoid any technical objection that could be avoided by amendment, and as she conducted her own case, we go as far as we can in leaving such considerations on one side. For every reason we have examined the facts with anxiety to give full weight to any argument by which the plaintiff's pious wishes might be carried out. But if it is obvious that the bill could not be amended so as to state a case within the jurisdiction of the court, the judgment must be affirmed or the appeal dismissed, as the defect of jurisdiction turns out to be peculiar to courts of the United States as such, or one common to all courts.

The allegation of the plaintiff's interest plainly does not mean that she has taken possession of the whole burying ground and has acquired a seizin of the whole by wrong. As it does not mean that, it must mean simply a statement of the rights that the plaintiff conceives to have been conferred by the Treaty of 1855 upon those whom she represents. The argument that vested rights were conferred upon individuals by that treaty, stated as strongly as we can state it, would be that, as the tribe was to be dissolved by the treaty, it cannot have been the beneficiary of the agreement for the permanent

appropriation of the land in question as a public burying ground, that the language used imported a serious undertaking, and that to give it force as such the United States must be taken to have declared a trust. If a trust was declared, the benefit by it must have been limited to the members of the disintegrated tribe and their representatives, whether as individuals or as a limited public, and thus it might be possible to work out a right of property in the plaintiff, as a first step towards maintaining her bill.

But we do not pursue the attempt to state the argument on that side because we are of opinion that it is plainly impossible for the plaintiff to prevail. There is no question as to the complete legislative power of the United States over the land of the Wyandottes while it remained in their occupation before their quitclaim to the United States. *Lone Wolf* v. *Hitchcock*, 187 U. S. 553, 565. When they made that grant they excepted this parcel. Therefore it remained, as the whole of the land had been before, in the ownership of the United States, subject to the recognized use of the Wyandottes. But the right of the Wyandottes was in them only as a tribe or nation. The right excepted was a right of the tribe. The United States maintained and protected the Indian use or occupation against others, but was bound itself only by honor, not by law. This mode of statement sounds technical perhaps, but the principles concerned are not so. The Government cannot be supposed to have abandoned merely for a moment and for a secondary matter its general attitude toward the Indians as wards over whom and whose property it retained unusual powers, so long as they remained set apart from the body of the people. The very Treaty of 1867, cited in the bill, providing for the resumption of the tribal mode of life by the Wyandottes, shows that the United States assumed still to possess such unusual powers. It seems to us that the reasonable interpretation of the language as to the burying ground is not that the United States declares itself subject to a trust which no court could enforce against it, if against any one, (see *Naganab* v. *Hitchcock*, 202

U. S. 473; *Oregon* v. *Hitchcock*, 202 U. S. 60,) while on the other hand it stripped itself of any protecting power that otherwise it might have retained. It seems to us more reasonable to suppose that the words 'shall be permanently reserved and appropriated for that purpose,' like the rest of the treaty, were addressed only to the tribe and rested for their fulfilment on the good faith of the United States—a good faith that would not be broken by a change believed by Congress to be for the welfare of the Indians.

We are driven to the conclusion that even if the suit is not to be regarded as a suit against the United States within the authority of the cases cited, 202 U. S. 60 and 473, the United States retained the same power that it would have had if the Wyandotte Tribe had continued in existence after the treaty of 1855, that the only rights in and over the cemetery were tribal rights, and that the plaintiff cannot establish a legal or equitable title of the value of $2,000, or indeed any right to have the cemetery remain undisturbed by the United States.

We are of opinion that in view of the circumstances it is just that the bill should be dismissed without costs. Act of March 3, 1875, c. 137, § 5, 18 Stat. 472.

*Decree reversed. Bill dismissed without costs.*