**CITY OF KANSAS CITY, KANSAS, a municipal corporation, Plaintiff,**

v.

**UNITED STATES of America; Fred A. Seaton, Secretary of the Interior; The Wyandotte Tribe of Oklahoma; and L. C. Maddox, Register of Deeds of Wyandotte County, Kansas, Defendants.**

**George ZANE, Jr., Marie Hattorn, Julia Grindel, Ruby Vickers, Dr. Frank Northrup, in person and for all persons similarly situated, Plaintiffs,**

v.

**UNITED STATES of America, Fred A. Seaton, Secretary of the Interior; The Wyandotte Tribe of Oklahoma, a corporation; L. C. Maddox, Register of Deeds of Wyandotte County, Kansas, Defendants.**

**Nos. KC-1279, KC-1280.**

United States District Court
D. Kansas.

Sept. 28, 1960.

Alan W. Farley, Charles W. Brenneisen, Jr., and Joseph A. Bukaty, Kansas City, Kan., for City of Kansas City, Kan.

Alan W. Farley and Joseph P. Jenkins, Kansas City, Kan., for George Zane, Jr., and others.

Wilbur G. Leonard, U. S. Dist. Atty., Topeka, Kan., for defendants.

Before HUXMAN and PICKETT, Circuit Judges, and HILL, Chief Judge, District Court.

PER CURIAM.

In Number KC-1280, George Zane, Jr., and others, sought to enjoin the United States, Fred Seaton, as Secretary of the Interior, and the Wyandotte Tribe of Oklahoma from selling a tract of land located in Kansas City, Kansas, known as the Huron Place Cemetery, and sought to enjoin L. C. Maddox, Register of Deeds of Wyandotte County, Kansas, from recording and filing any instrument of conveyance on said tract. Plaintiffs alleged that they were descendants of the Wyandotte Indian Nation and that the action was brought for the benefit of all inter-

ested persons. It was alleged that the matter in controversy exceeded, exclusive of interest and costs, $10,000. In Number KC–1279, City of Kansas City v. the same defendants, the plaintiff sought similar relief. In addition to the general allegations of the complaint in Number KC–1280, which plaintiff incorporated, the complaint in this case alleged that plaintiff and the United States had expended large sums on the rehabilitation and maintenance of the cemetery, that on March 20, 1918, plaintiffs entered into a contract with the United States to make improvements to the cemetery and to maintain it forever, and that the City had expended large sums of money in compliance with the terms of the contract. Both complaints sought the judgment of the court declaring null and void the Act of Congress of August 1, 1956, 70 Stat. 893, 25 U.S.C.A. § 791 et seq., under authority of which the sale proceedings were being conducted, and to enjoin the sale of the cemetery.

In both cases, the defendants, the United States, Fred A. Seaton, Secretary of the Interior, and the Wyandotte Tribe of Oklahoma, a corporation, filed a motion to dismiss on the grounds that: (1) The complaint fails to state a cause of action against said defendants upon which relief can be granted; (2) The Court lacks jurisdiction of said defendants in this action; (3) The court lacks jurisdiction of the subject matter of this suit; (4) The cause of action is not one upon which the United States has consented to be sued; (5) With respect to the defendant, Fred A. Seaton, Secretary of the Interior, venue lies only in the district of his official residence which is Washington, D. C.; (6) The cause of action against the defendant, the Wyandotte Tribe of Oklahoma, is an action that has not been authorized by an Act of Congress.

Because both actions sought to enjoin an Act of Congress, a Three-Judge Court was constituted to hear and determine the issues, and since both cases presented substantially the same basic issues, they were consolidated for trial. The consolidated action came on for hearing at Kansas City, Kansas, on May 4, 1960, on defendants' motions to dismiss. In order to obviate the necessity of two hearings, it was stipulated and agreed that defendants should file their answers without prejudice to their motions to dismiss, so if the court overruled the motions or concluded it was not necessary to pass thereon, it could then determine the case on the merits.

## Findings of Fact

There is no disputed issue of fact and the question presented is solely one of law. The Wyandotte Tribe of Indians [1] has a long history going back many years, and including their dealings not only with the Government of the United States but also with the Delaware Indians. It is not necessary to set out that history in detail. It is only necessary to say as a result of a number of transactions with the Delawares, the Tribe, on December 14, 1843, acquired from them thirty-six sections of land by purchase with funds ultimately obtained from the United States. They also obtained by donation three additional sections of land. This tract was situated at the point of the Junction of the Missouri and Kansas Rivers. The cemetery in controversy herein was a part of this tract.

By Article 1 of the Treaty of January 31, 1855, (10 Stat. 1159) between the United States and the Tribe, the Tribe was to be dissolved on the ratification of the Treaty, and the members thereof were to be made citizens of the United States. The Act provided for a limited time for such persons as did not desire emancipation to apply for exemption from the provisions of the Act. By Article 2, the Wyandotte Nation ceded the land above designated to the United States for subsequent subdivision, in severalty, to qualified Indians, "except as follows, viz.: The portion now enclosed and used as a public burying-ground,

1. Herein called the Tribe.

shall be permanently reserved and appropriated for that purpose * * *."

All lands ceded to the United States were subsequently allotted to individual Indians qualified to receive them, except so far as material here Allotment Number 282, the Huron Place Cemetery, the subject of this litigation. A small group of Indians which may be referred to as the Splinter Group did not accept citizenship. They left the area and moved to a reservation in Oklahoma. They have not used the cemetery since their removal to Oklahoma. Under subsequent laws, they incorporated as the Wyandottes of Oklahoma, and as such corporation are a party-defendant to this action. Huron Place Cemetery has been used as a burial ground for Wyandotte Indians for more than a century and there is evidence that some 800 Indians have been buried there. Since the incorporation of the Wyandottes of Oklahoma, the United States has dealt with them as the sole representative of the Wyandotte Indians. Plaintiffs and those associated with them in interest are excluded from membership in the Wyandottes of Oklahoma. It is also clear that there is a sharp conflict in interest with respect to the cemetery between the two groups. Plaintiffs and those associated with them are using and want to continue to use the cemetery as a burial ground, while the Wyandottes of Oklahoma, do not use it and since their removal to Oklahoma have not used it. They have no interest in maintaining it as a cemetery.

On March 20, 1918, the Superintendent of the Haskell Institute at Lawrence, Kansas, on behalf of the Commissioner of Indian Affairs, entered into a contract with Kansas City, Kansas, which, in substance, provided that the United States would pay the City the sum of $1,000, and in addition, make certain specified improvements, and in consideration thereof, the City agreed to have work done as set out in other specifications and further "agrees to forever maintain" the cemetery and park as it maintains its other public parks.

Section 5(c) of Public Law 887, (Aug. 1, 1956) upon which this action is predicated, provides for the transfer or sale of the Huron Place Cemetery in accordance with subsections (a) and (b) of Section 5, and the use of the proceeds from such sale for the removal and reburial of the remains of those now buried in the cemetery and for the erection of a monument to their memory. It is to prevent a proposed sale under this Act that these actions were instituted.

Case Number 1280

One ground of the motion to dismiss is that the United States has not consented to be sued; that the Secretary of the Interior can be sued only at the place of his official residence which is in Washington, D. C.; and that an action against the Indian Tribe of Oklahoma, a corporation, has not been authorized by Act of Congress.

We do not find it necessary to determine whether the Court has jurisdiction of the United States, the Secretary of the Interior, or the Oklahoma Tribe of Indians, because, in any event, as we view the case, the action must be dismissed. It is our conclusion that plaintiffs do not have a cause of action and are without standing in court to test the constitutionality of the Act in question. A great number of authorities are cited by the various parties dealing with Indian affairs in support of their respective contentions which we do not deem necessary to analyze or consider in reaching our decision. We feel that Conley v. Ballinger, 216 U.S. 84, 30 S.Ct. 224, 225, 54 L.Ed. 393, is dispositive of every issue presented in this case. Plaintiffs seek to distinguish this case but in the alternative ask us to overrule it if it cannot be distinguished. We think it cannot be distinguished and if it is to be overruled, that is for the Supreme Court and not for this Court.

In the Conley case, the Court considered the Act of Congress of June 21, 1906. That Act, as the Act of 1956, authorized the sale of the Huron Place Cemetery. The only difference in the two Acts is that the Act of 1906 directed the

proceeds of the sale to be distributed to the Parties to the Treaty of 1855, while the present Act directs that the net proceeds be distributed to the Wyandotte Tribe of Oklahoma.

Plaintiffs seek to distinguish the Conley case on the ground that Conley was brought as an individual action in which plaintiff was unable to establish that she had an individual right of the value of at least $2,000. We do not so narrowly construe the decision of the Court. The Court recognized that the action had been brought without the aid of counsel. The opinion makes it clear that the Court sought to determine if any cause of action could be stated. The Court based its ultimate decision on the ground that it was impossible for Conley to state a cause of action. The Court said: "But if it is obvious that the bill could not be amended so as to state a case within the jurisdiction of the court, the judgment must be affirmed * * *." The Court, in effect, treated the action as a class action. Thus, the Court said: "The allegation of the plaintiff's interest plainly does not mean that she has taken possession of the whole burying ground, and has acquired a seisin of the whole by wrong. As it does not mean that, it must mean simply a statement of the rights that the plaintiff conceives to have been conferred by the Treaty of 1855 *upon those whom she represents.*" [2] If Conley, an an individual, had no individual rights under the Treaty which she could enforce in a court of law, then plaintiffs in this action, and those similarly situated, have no individual rights which they may enforce herein.

Speaking of the cemetery tract, the Court, in the Conley case, said: "It seems to us more reasonable to suppose that the words, 'shall be permanently reserved and appropriated for that purpose,' like the rest of the treaty, were addressed only to the tribe, and rested for their fulfilment on the good faith of the United States * * *." The Court pointed out that the good faith obligation would not be broken "by a change believed by Congress to be for the welfare of the Indians." Thus, whether the cemetery is to be continued rests in the exercise of the sound discretion of Congress, a discretion which an individual Indian may not challenge and the exercise of which confers no cause of action which may be asserted in a court of law.

Case Number 1279

In Number 1279, the City of Kansas City seeks the same relief against the defendants as do the plaintiffs in Case Number 1280. It also asks that the Act of 1956 be declared unconstitutional and that the United States and the Secretary of the Interior be enjoined from selling the cemetery. It predicates its cause of action upon the contract of March 29, 1918, with the Secretary of the Interior. It construes this contract as an agreement on the part of the United States to forever maintain the Huron Place Cemetery. We do not so construe it. No where therein does the Government, or its agent, agree to maintain the cemetery permanently or for any period of time. True, the contract binds the City to forever maintain the cemetery. We construe this to mean no more than that the City binds itself to maintain the cemetery as a public park so long as it is being used for that purpose.

Furthermore, if the contract should be construed as a binding obligation on the part of the Secretary of the Interior to forever maintain the cemetery as a burial place for Indians, it would be void and unenforceable because so construed, it would be in derogation of the inherent power of Congress to deal with Indian lands entrusted to its care as it thought best.

For the reasons above stated, we conclude that the complaint in each case fails to state a cause of action giving this court jurisdiction, and that the motions to dismiss such complaints should be sustained. Formal decrees consistent with the views of the court will be prepared for entry.

2. Emphasis supplied.