CARUTH v. GILLESPIE ET AL.

[68 South. 927.]

1. ADVERSE POSSESSION. *Presumption. Lost deed or grant. Persons affected. State.*

   Where in a suit to confirm title to land, plaintiff claimed under a patent from the state issued in 1907, after a sale as forfeited tax lands in 1872 and defendant claimed that the state had parted with any title it had, prior to such patent and showed their claim of title under deeds executed in 1884 and 1890, and that all records of conveyance before that had been destroyed by fire in 1882, and showed their peaceable possession for more than thirty years, accompanied by the usual acts of ownership, such as the payment of taxes, that taxes were paid by private owners on the land from 1875, that the land was not included in any of the lists certified by the state auditor to the chancery clerk as lands held by the state for taxes. In such case a grant to defendant's predecessors in title will be presumed and the fact that plaintiff claimed under a forfeited tax patent from the state added nothing to the validity or force of his claim.

2. ADVERSE POSSESSION. *Presumption. Lost deed or grant.*
   A grant from the sovereign may be presumed from the long-continued, peaceable possession of real property, accompanied by the usual acts of ownership, even as against the sovereign itself, in such case defective links in the chain of title will be supplied by presumption and the title declared perfect, and such presumption exist independently of the statute of limitations.

3. ADVERSE POSSESSION. *Persons affected. State.*
   On questions arising between the sovereign and the citizen, courts will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens.

APPEAL from the chancery court of Pike county.
HON. J. S. HICKS, Chancellor.

Suit by B. M. Caruth against J. L. Gillespie and others, with cross-bill by defendants. Decree for defendants of their cross-bill, dismissing the original bill, and plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson* and *J. B. Sternberger*, for appellant.

*E. J. Simmons* and *Thos. Mitchell*, for appellees.

STEVENS, J., delivered the opinion of the court.

This is a suit in equity by appellant, as complainant in the court below, to confirm his title to one hundred and fifty acres of land in Pike county, alleged to have been sold by the sheriff and tax collector of the county to the state on June 3, 1872, for taxes of 1871, and acquired by appellant through mesne conveyances from the state. Several of the defendants, heirs at law of Eli Varnado deceased, by answer and cross-bill, denied the material averments of the bill, and especially contended that the tax sale to the state was void because made on a day not fixed or authorized by law, because the different copies

of the certified list of land struck off to and sold to the
state on the date alleged, as exhibited to the pleadings
and as introduced in evidence, were at variance one with
the other, because the list showed that the land sold
for an illegal amount of taxes and damages, and because
the state parted with its title prior to the patents un-
der which appellant claims. Other questions are raised
by the answer and cross-bill not necessary to consider
in the disposition of this appeal. It is shown by the
evidence in this case that appellees and their predeces-
sors in title have been in the actual, continued, and un-
interrupted possession of the lands in question for some
thirty five years or more. The respondents and cross-
complainants in their answer and cross-bill, among other
things, charge:

"That if the state of Mississippi ever had any title
to any part of said land by virtue of the sale for delin-
quent taxes, as aforesaid, which is here denied, still said
state of Mississippi parted with its title long prior to
the date of the alleged patent."

The chancellor dismissed the original bill and granted
the relief prayed for in the cross-bill, confirming the
title of appellees, and canceling the claim of complainant,
appellant here. Appellant claims under a patent from
the state in 1907; the land in question being sold by
the state as forfeited tax lands. Appellees claim title
as heirs at law of Eli Varnado, deceased, who died while
he and his family were living upon the premises in ques-
tion as their home. Eli Varnado claimed title under
a deed of conveyance from one W. S. Tate, dated
March 28, 1890; and Mr. Tate derived and claimed
title from one G. G. Spring, under a deed dated March
29, 1884. Both of these deeds are of record in the office
of the chancery clerk of Pike county. All conveyances
before that time are shown to have been destroyed by
a fire which destroyed the courthouse and all the public
records of Pike county in 1882.

Several witnesses were introduced to prove the adverse possession of appellees and their long-continued possession and claim of ownership.

Mr. P. H. Varnado, a witness for appellees, and a man sixty six years of age at the time of the taking of the depositions, testified that he had been familiar with this land since 1854 or 1855, while he was a schoolboy at and around this very place; that his father, Isham E. Varnado, at one time owned the land in question; that I. E. Varnado acquired it about 1875, and that the information which the witness had from his father "was that he bought it from the state in 1875;" that Mr. G. G. Spring at that time was laying some claim to the land, and a dispute as to the ownership of the premises "was settled by Mr. Spring taking over this land and thereafter selling it to Mr. Tate."

Mr. W. A. Tate testified that he had known the land since 1876; that one Homer Roberts at that time had been claiming the land and swapped it to Mr. Spring for forty acres of prairie land in Illinoins; that this transpired before the burning of the courthouse; and that the deed from Roberts to Spring was a matter of record before the courthouse was burned.

After the burning of the courthouse, the board of supervisors, at their regular meeting in October, 1882, passed the following order:

"Ordered by the board that the clerk be and is hereby authorized to procure from the auditor of public accounts a list of all the lands in this county that are held by the state for taxes; the expenses of same to be paid out of the treasury of this county."

And in pursuance of this order, and on October 30, 1882, S. Gwin, auditor, certified a list of all the state lands in Pike county to be recorded in the office of the chancery clerk of Pike county, and this list does not embrace the land in question. It is further shown that the lands in controversy were not embraced in any of

the lists of lands certified to the chancery clerk of Pike county, as required by several acts of the legislature, and, in the language of counsel, ''that presumptively the state had parted with its title prior thereto.'' The chancery clerk was required to keep a public record known as ''State Land Book No. 1 of Pike County,'' embracing a list of all lands, and this record nowhere reflects claim of ownership by the state. The tax receipt for 1875 issued to I. E. Varnado, and various other tax receipts from that time on to the filing of the suit, were introduced in evidence. It is conceded that the lands appeared on the assessment rolls of Pike county as the subject of private ownership, and that taxes were assessed against and paid on this land from 1875 to the filing of the suit.

Aside from many serious questions confronting appellant in this case, we are constrained to hold that a grant from the state to the predecessors in title to appellees must be presumed from the thirty years and more of continued, peaceable possession, accompanied by the usual acts and claim of ownership, and that therfore the broken link in the chain of title, under which appellees claim, is supplied by this presumption of law, and that appellees must be regarded as having a prior and older title to that of appellant.

The question of the presumption of a lost grant is well treated in volume 2, C. J., p. 288 *et seq.* On page 290 it is stated:

''A grant from the sovereign may be presumed from the long-continued, peaceable possession of real property, accompanied by the usual acts of ownership, even as against the sovereign itself.''

And the cases cited in the notes fully sustain the text.

In the case of *Nixon's Heirs* v. *Carco's Heirs*, 28 Miss. 414, the court says:

"In *Grand Gulf Railroad* v. *Bryan,* 8 Smedes & M. 279, this court says: 'The authorities abundantly prove that, in favor of long possession, almost every variety of written evidence of title will be presumed. The defective links in the chain of title will be supplied by presumption, and the title declared perfect, when the possession has continued for a great length of time without interruption.'"

And in the case of *Stevenson's Heirs* v. *McReary,* 12 Smedes & M. 9, on page 49, 51 Am. Dec. 102, the court, by Chief Justice SHARKEY, says:

"The language of Judge ARCHER in *Beall* v. *Glynn,* 6 Har. & J. 361, is worthy of being extracted at some length: 'Presumption is often resorted to for the purpose of supplying defective evidence; and, in this country, it is not oftener applied to any subject than to supply defective title to lands. It would be difficult to make out the titles to many of the elder tracts of land in this state, by a regular deduction of title deeds from the patentees down to the present proprietors, without resorting, in some stage of them, to presumption. Records may sometimes be lost or destroyed; and ancient title papers may be defectively executed, or the proof of them, from lapse of time, may be impossible. Yet in all these cases the possession may have been invariably in the person claiming the land, and in those from whom he derives title. In such cases, possession which has been long undisturbed, and which is, in general, the concomitant of title, induces a belief in the mind, of title, little short of that which would be produced by the adduction of the most undeniable and best authenticated evidences of right.' In accordance with this language, the court presumed title, where one of the mesne conveyances, between the patentee and the holder of the land was missing, on the strength of the lapse of time and the recitals in one of the deeds subsequent to the missing conveyance. The same court,

on one occasion, held that from a void deed, in connection with long possession, a valid conveyance might be presumed."

And again, on page 50 of 12 Smedes & M. (51 Am. Dec. 102.):

"Laws and judicial tribunals are established for defining and settling rights, so that order and tranquillity may prevail in the community. The policy of the law favors the repose of society, and hence it makes due allowances for the frailties of human memorials, and the difficulties in establishing perpetual evidences of the transactions of men. When so long a time has elapsed that certainty in proof of events cannot be expected it receives as a substitute that which is less certain in order to protect apparent right. A contrary policy is not to be tolerated. It would convert the law into an engine to work incalculable mischief. Instead of giving repose to society, it would be the means of promoting contention and strife which would often terminate in injustice."

In the recent case of *Carter* v. *Walker* (Ala.), 65 So. 170, Judge SOMERVILLE, for the court, quotes with approval from the case of *United States* v. *Chavez*, 175 U. S. 509, 20 Sup. Ct. 159, 44 L. Ed. 255, as follows:

"Although neither limitation nor prescription runs against the United States government to the impairment of its title to property, yet 'a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession for twenty years, and that such rule will be applied as *a presumptio juris et de jure,* whenever, by possibility, a right may be acquired in any manner known to the law.' "

It is furthermore stated in the text (volume 2, C. J., p. 292):

"Since the presumption of a lost grant exists independently of the statute of limitations, it is not necessary that possession  .  .  .  should be held for the statu-

tory period in order that the presumption may arise.
The period necessary or sufficient to create the presumption is not in most jurisdictions governed by any hard
and fast rule. It usually depends upon the circumstances of the case. However, twenty years' peaceable
possession, accompanied by the usual acts of ownership,
is generally held sufficient to create the presumption.''

In the case of *Scales* v. *Cochrill,* 3 Head. (Tenn.) 432,
it is said:

''The true principle is that without reference to the
manner in which the respective possessions are connected or succeed each other, if they are continued and
connected in fact, without any hiatus, for twenty years,
each claiming the ownership in connection with his possession, without regard to the source from which each
claims to have derived his title, the presumption will
arise that the state has parted with her right by grant.
consequently any subsequent grant of the same land
would be a nullity, and confer no right upon the
grantee. . . . The law has very wisely fortified the
quiet, unsuspecting cultivator of the soil by this and
other barriers, against the shrewd, prying speculator,
who cares not who is disquieted, or suffers loss, so
that he can make gain. Such adventurers must stand
upon their strict legal rights, and expect nothing
more.''

It will be noted that in this case twenty years' possession was sufficient even as against the state.

In the case of *Busby* v. *Florida Cent. & P. R. Co.,* 45
S. C. 312, 23 S. E. 50, the opinion of the court concludes
as follows:

''The fact that the plaintiff had been paying taxes
on the land for a number of years, . . . and the
further fact that it did not appear that the state was
setting up any claim to this land, do afford some evidence (whether sufficient or not, it was for the jury
to determine) that the state had parted with its title

to the land, for certainly we would not be justified in assuming that the state would collect taxes on its own land.''

The testimony in this case is consistent with the presumption of law that the state in 1875 in some way, either by a sale under the abatement act or by a conveyance of its title derived from the sale shown to have been made to the state in June, 1872, parted with its title. It is clearly shown that but for the principle embedded in our organic law, providing that the statute of limitations shall not run against the state, appellees would have a perfect title by adverse possession. The equities of the case are with appellees, and this without applying the statute of limitations.

The fact that appellant claims under a forfeited tax patent from the state adds nothing to the sanctity or confidence of his claim, for, as was well said by Judge CALHOON in the case of *Warren County* v. *Lamkin*, 93 Miss. 123, 46 So. 497, 22 L. R. A. (N. S.) 920, on questions arising between the sovereign and the citizen, courts ''will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens.''

The revenue law passed by the legislature in 1876 (Laws 1876, chapter, 104), recasting and reenacting all the law on the subject of assessments and sale of lands for taxes provided among other things:

''That all lands heretofore sold to the state for taxes may be redeemed or purchased in the manner hereinbefore provided, on payment of taxes and costs, but without damages, and that the auditor shall transmit a list of such lands with the taxes and costs due thereon to the chancery clerks of the different counties who shall record the same in a book to be kept for that purpose,'' etc.

Likewise, section 523, Code of 1880, provided that the list of state lands—

"shall be recorded in the auditor's office, and shall then be certified by the auditor and be transmitted to the clerk of the chancery court of the county and be by him recorded in a book kept for that purpose."

The failure to comply with this law is very persuasive that the state, at the time the courthouse of Pike county was destroyed, was not claiming the lands in question.

The law favors *bona fide* possession. Lands are for the use and enjoyment of settlers. It is this possession which Judge McLean, in the *Hamner Case* in 100 Miss. 349, 56 So. 466, designates as "the life-infusing element." In aid of this possession, our statute providing that ten years' possession of lands confers title was enacted; and to dispossess appellees from their homestead in this case on a claim under an old tax sale in 1872, when it is shown that appellees and their predecessors in title have enjoyed exclusive possession for at least thirty years without question on the part of the state or any one else, would be to convert a court of justice into one of injustice. We are not certain upon what particular grounds the chancellor below based his opinion, but, for the reasons herein expressed, we think the case should be affirmed.

*Affirmed.*