### TERRITORY OF HAWAII v. HUTCHINSON SUGAR PLANTATION CO.

(Circuit Court of Appeals, Ninth Circuit. May 9, 1921.)

No. 3588.

1. **Courts ⊂⇒96(1)—Interpretation of prior decisions of Supreme Court of Hawaii by that court binding on Circuit Court of Appeals.**

    The decision of the Supreme Court of the territory of Hawaii as to the purport and meaning of prior decisions of the Supreme Court of the territory as to the existence of the common-law rule of presumption of a grant *held* binding on the Circuit Court of Appeals.

2. **Adverse possession ⊂⇒104—Common-law rule as to presumption of grant obtains in Hawaii.**

    The common-law doctrine of presumption against the government of a lost grant arising from long-continued peaceful occupation obtains in Hawaii; it not being necessary to prove, in addition to such possession, the probability that a grant did issue, but merely that there was a legal possibility of a grant.

3. **Adverse possession ⊂⇒104—Evidence held to raise presumption of lost grant.**

    In a proceeding by the territory of Hawaii to register title to land claimed by it, evidence for opposing claimant *held* to raise a presumption of lost grant.

Appeal from the Supreme Court of the Territory of Hawaii.

Proceeding by the Territory of Hawaii to register and confirm its title to the Ahupuaa of Kioloku, in the District of Kau, Island and County of Hawaii, Territory of Hawaii, opposed by the Hutchinson Sugar Plantation Company. Judgment of dismissal was affirmed by the Supreme Court of the Territory, and the Territory appeals. Affirmed.

Harry Irwin, Atty. Gen. of Territory of Hawaii, and J. Lightfoot, Deputy Atty. Gen., for the Territory of Hawaii.

A. G. M. Robertson, Alfred L. Castle, Clarence H. Olson, W. A. Greenwell, and Arthur Withington, all of Honolulu, T. H., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. On October 1, 1913, the territory of Hawaii, the appellant herein, filed in the land court of the territory a petition for the registration of its alleged title in and to the Ahupuaa of Kioloku, district of Kau, island of Hawaii, containing 850 acres, claiming to own the said land and the highways crossing the same in fee simple. The petition alleged that the land was in the class of unassigned lands—that is to say, that it had never been awarded, patented, or granted to any person or persons, and was consequently the property of the government; and the petitioner particularly relied upon the fact that the land was not mentioned in the record of the Great Mahele of 1848, by which all the large tracts of land of the kingdom were intended to be assigned and set apart in severalty to and between the king, the chiefs, and the government, respectively. The appellee, the Hutchinson Sugar Plantation Company, answered the petition, denied the claim of the territory, and asserted title in itself. No further steps were taken in the proceeding until five years later.

On the trial the appellee claimed by mesne conveyance from Ane Keohokalole, and relied on the presumption of a grant from the government to her. For the appellant there was the testimony of one Kanakanui, who had been for 30 years in the service of the Bureau of Government Survey. He testified that he had searched the records of the Land Commission and the Privy Council of the former kingdom without finding record of or reference to the Ahupuaa of Kioloku; that he found records of the Mahele and Land Commission awards and other awards to Ane Keohokalole and to her husband, but none of the land in question; that the Ahupuaa in question was not mentioned in the Mahele records, although there was a record showing a Mahele of other lands to Keohokalole; that he had made a careful search of the records of the Privy Council; that he searched for and failed to find a royal patent or grant or government deed covering the land.

The judge of the land court, in weighing the testimony of this witness, referred to the fact that the search of the Mahele records was not "page by page," and to the admission of the witness that in making his search he was working on government titles in general, and not looking for Kioloku especially. That court was of the opinion that the possibility remained that evidence of an award of Kioloku to Ane Keohokalole actually existed in the records of the Land Commission. The court reached the conclusion that under the circumstances shown in the evidence a grant from the government to Ane Keohokalole was probably to be presumed, and dismissed the territory's petition. From that decision the case was taken on error to the Supreme Court of the territory, where the judgment of the land court was affirmed. From the decision of the Supreme Court of the territory the present appeal is taken.

The great Mahele or division of lands of 1848 was not regarded as finally establishing title. It was still necessary to secure an award from the Land Commission or from the Minister of the Interior. By an act of the Legislature of May 26, 1853, it was provided that "all

claimants who shall not have appeared before the board and proved their claims previous to May 1, 1854, should be forever barred from proving the same." By the Act of August 24, 1860, authority was given to the Minister of Interior to grant awards for their lands to all chiefs who had failed to receive the same from the Land Commission provided that their names appeared in the Mahele book of the year 1848.

It was shown in the evidence before the land court that on June 14, 1860, Ane Keohokalole and her husband conveyed all her lands, including the land in controversy, to a trustee, and that the account of the trustee showed the regular receipt of semiannual rent for the land of Kioloku from 1861 to 1868, inclusive. Ane Keohokalole died in 1869. In 1870, by a partition deed between her heirs, the Ahupuaa of Kioloku was set apart to her son David Kalakaua, afterward King Kalakaua. It is admitted that from the date of the partition deed to the present time Kalakaua and his successors in interest have held the actual, open, continuous, and adverse possession of the land, and have paid all the taxes assessed thereon by the monarchy, the provisional government, the republic of Hawaii, and the territory of Hawaii. It was also shown from ancient maps and surveys that as early as 1852, in a survey of a small tract within the boundaries of Kioloku, the surrounding land was referred to as "Konohiki" land, a term which meant privately owned land, in contradistinction to government land.

The appellant relies upon the admission made by David Kalakaua, when in 1873 he presented a petition to the boundary commissioner for the island of Hawaii to have the boundaries of the Ahupuaa of Kioloku and six other Ahupuaas settled and adjudicated. In that petition he represented that—

"A. Keohokalole had lands. She did not receive awards from the Land Commissioner to some of her lands; but she still holds said Ahupaas to this time."

Adjoining owners were notified of the application, among whom was King Lunalilo, owner of one of the tracts adjoining Kioloku, and the government, the owner of another adjoining tract appeared. Testimony was taken and judgment was rendered defining the boundaries of Kioloku. No objection was made by the king or by the government to the proceeding or to the findings. As to the other six Ahupuaas, no hearing was had and no action was taken by the commissioner of boundaries, and Kioloku was the only one as to which Keohokalole's claim was recognized.

It is urged that Kalakaua's admission that no award had been issued to his mother is conclusive against the right of the appellant to the land of Kioloku. But against the force of that admission is the fact that the boundary commissioner, with the acquiescence of the king and the government, did in fact recognize his claim to title, and did settle the boundaries of his land upon his application. It is not unreasonable to assume that Kalahaua in making that representation was mistaken, or that some understanding was had between him and the government as to the title to Kioloku, in consideration of his re-

linquishment of claim to the other lands named in his application.    This was the view of the land court.

The appellant contends that the common-law doctrine of presumption of a grant as against the sovereign has never obtained in Hawaii, and relies upon Kahoomana v. Minister of the Interior, 3 Haw. 635, and Thurston v. Bishop, 7 Haw. 421.    In the first case the court held that 20 years' possession of land for which no award of the Land Commission has issued affords no presumption of a grant.    In the opinion it was said:

"But as against the government a grant cannot be presumed or inferred from long possession, in view of the law which required claimants to land to present their claims to the Land Commission for confirmation or rejection."

And to the argument that the length of adverse possession since the closing of the Land Commission created the inference of a grant, the court said:

"To this the answer is complete.    There is no prescription against the state.    'Quod nullum tempus occurrit regi.'    A state cannot be disseized."

The court cited Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534, Lindsey v. Miller's Lessee, 6 Pet. 672, 8 L. Ed. 538, and other cases in which it was held that the statute of limitations does not run against the state.

The appellee contends that in dealing with the case there presented the court considered only the question whether or not a presumption of grant would arise solely from adverse possession for the period fixed by the statute of limitations, and that the meaning of the decision is not that there might not be such circumstances, in connection with a continuous adverse possession for many years, as to give rise to a presumption of a grant, but that the statutes of limitations do not run against the government.    It is to be said that the court did not in that case deny the existence in Hawaii of the common-law doctrine of presumption of grant arising from long-continued peaceful occupation, but held that in the case before it a grant could not be presumed against the government of Hawaii, in view of the law which required claimants of land to present their claims to the Land Commission, together with the fact, which the court found, that no applicant had in fact ever received an award of the land.    The court held, in brief, that title could not by any legal possibility have been acquired by the possessor of the land, and therefore denied the presumption of a grant. In Thurston v. Bishop, the court again said: "There is no prescription against the state"—citing Lindsey v. Miller's Lessee, 6 Pet. 666, 8 L. Ed. 538, and observed that the naked possession of the defendants "can never ripen into a title."

[1-3] The appellant and the appellee differ as to the purport and meaning of these two decisions of the Supreme Court of the Hawaiian Islands, but we consider the decision of the Supreme Court of the territory in the case at bar a final determination of the law of the territory, which is binding on this court.    That court held that in the cases above discussed the Supreme Court was merely construing the principles involved in the application of the statute of limitations, and

that the common-law presumption of a lost grant was not involved. Said the court:

"The evidence introduced on behalf of the company we deem to be sufficient to sustain the judgment of the land court in presuming that a grant of Kioloku was issued to Ane Keohokalole, the grant itself having been lost or for other reasons cannot now be produced."

And the court cited United States v. Chaves, 159 U. S. 452, 16 Sup. Ct. 57, 40 L. Ed. 215; United States v. Chavez, 175 U. S. 509, 20 Sup. Ct. 159, 44 L. Ed. 255; Jackson v. McCall, 10 Johns. (N. Y.) 377, 6 Am. Dec. 343; White v. Loring, 24 Pick. (Mass.) 319; University of Vermont v. Reynolds, Ex'r, 3 Vt. 542, 23 Am. Dec. 234; Fletcher v. Fuller, 120 U. S. 534, 7 Sup. Ct. 667, 30 L. Ed. 759; United States v. Pendell, 185 U. S. 189, 22 Sup. Ct. 624, 40 L. Ed. 866; and Williams v. Donell, 2 Head (Tenn.) 695. To those citations we add Caruth v. Gillespie, 109 Miss. 679, 68 South. 927; Carter v. Walker, 186 Ala. 140, 65 South. 170; State v. Dickinson, 129 Mich. 221, 88 N. W. 621; Jover v. Insular Government, 221 U. S. 633, 31 Sup. Ct. 664, 55 L. Ed. 884.

Under the rule of law applicable to the case, as we find it, it was not necessary that the appellee should prove the probability that a grant did in fact issue to one of its predecessors in interest. It was enough to show, as we think it was shown, that there was a legal possibility of a grant. We find no error.

The judgment is affirmed.