## UNITED STATES v. FULLARD–LEO et al.
### Civ. No. 417.

District Court, Hawaii.
March 6, 1944.

Charles F. Rathbun, Sp. Asst. to the Atty. Gen., for the United States.

Robertson, Castle & Anthony, of Honolulu, T. H., for Fullard-Leos.

Smith, Wild, Beebe & Cades, of Honolulu, T. H., for Coopers and other interests.

METZGER, District Judge.

This cause came on for further proceedings pursuant to the mandate issued by the Circuit Court of Appeals. 133 F.2d 743.

When the case was last before this court, 66 F.Supp. 774, the respondents presented certain defenses which the court did not pass upon because of the view taken by it upon the primary question as to the effect of the annexation of the island of Palmyra by the Hawaiian government in 1862, the defenses referred to having been interposed in the event that the first question and petitioners contention that Palmyra was public land of the Republic of Hawaii when the Hawaiian Islands were annexed by the United States, should be determined in favor of the petitioner.

This court having been reversed by the Court of Appeals upon the only point which had been decided, the cause was remanded evidently for further proceedings in order that the remaining questions could be adjudicated by this court.

In the meantime, by leave of court, the respondents, the Fullard-Leos, amended paragraph VI of their answer thereby asserting laches on the part of the petitioner and the rights of bona fide purchasers, and averring that the decree of the Land Court of Hawaii upon the application of Henry E. Cooper was a valid and binding decree.

The petitioner filed a motion for the entry of peremptory judgment in its favor. The motion was denied. Further evidence was introduced by respondents, Fullard-Leos and petitioner upon the issues thus framed by the amended pleadings. At the conclusion of the hearing, counsel for the petitioner declined to argue the cause standing upon the contention that the opinion of the Court of Appeals foreclosed this court from an examination into the issues raised by the amended pleadings and the evidence adduced at the hearing on remand.

The respondents reassert their further defenses as follows: (1) that the evidence justifies and requires the application of the doctrine of lost grant, (2) that the decree of the Land Court and the certificate issued thereon to Henry E. Cooper were valid and binding as against the United States, and (3) that in 1922 they became purchasers for value without any notice or knowledge of any claim on the part of the United States government that it owned the island of Palmyra.

Concerning the question as to the application of the doctrine of lost grant this court is not entirely clear as to its position. The court made no ruling on this question in its former findings and conclusions. Nevertheless the question was briefed and argued by counsel in the Court of Appeals, and that court seemingly considered that the doctrine in question should not be applied because of lack of evidence to show that the possession of the respondents had been uninterrupted and adverse. If the Court of Appeals intended to definitely decide the question, the ruling has become the law of the case and therefore

binding on this court. On the other hand, the Court of Appeals may have intended to rule on the point only upon the evidence which was then before the court. At the former hearing, upon an objection raised by counsel for the petitioner, that it was immaterial what Mr. Fullard-Leo did with or upon the island, an agreement was reached by court and counsel whereby that line of evidence was dropped. This is shown by the record of the Court of Appeals (R. 253, 254). That understanding would, by the same token, have applied to what the other owners did upon the island.

At this second hearing it was shown and the court finds that when Mr. Fullard-Leo was on the island for twelve days in 1924 he had ten men at work there; that when and as opportunity offered he sent plants and trees to be planted on the island in 1933, 1935, 1936 and 1937.

Henry E. Cooper registered the island in the Land Court in 1913. He was on the island for about two weeks in that year, accompanied by two scientific gentlemen, a botanist and a conchologist, presumably to study the possibilities of his newly acquired property. A small building was erected on one of the islands. In 1914 Mr. Cooper spent about a month on the island.

In 1920 Mr. Cooper leased the island to William Meng and Frank E. White for the term of five years commencing September 1 of that year. The lease was assigned to the Palmyra Copra Company, Limited, and representatives of that company were actively engaged on the island from October, 1920, to December, 1921.

In 1922 Mr. Cooper sold and conveyed all but two of the islets to Mr. and. Mrs. Fullard-Leo who had taken over the lease, and a Land Court Certificate was issued to them.

In 1938 the United States of America, acting through the Navy Department, began negotiations with the Fullard-Leos for a lease of the property, and terms were agreed upon but while final execution of the lease was pending this suit was commenced.

Evidence introduced showed that when the paper title to the island was in Pacific Navigation Company that company had workmen on the island from October, 1885, to October, 1886. This evidence indicates that the assessment of the island for property taxes against the company and payment of the taxes in 1885, 1886 and 1887 was not by any mistake but was advisedly done. It shows not only possession under claim of ownership, but a recognition of the company's ownership by the Hawaiian government.

Whether or not the subsequent owners paid taxes on the island prior to the registration of the title by Mr. Cooper was not shown. Mr. Crozier, deputy tax commissioner of the Territory, testified at the former hearing (R. 312) that the old tax records are incomplete, many of the books being missing. Since the island was registered in the Land Court the taxes have been regularly paid by Mr. Cooper, or his descendants, and by the Fullard-Leos.

Witnesses produced by the petitioner at the second hearing did not contradict the evidence introduced by the respondents.

Admiral Ghormley, then a flag lieutenant, and others acting under Admiral Sutherland of the United States Navy in February, 1912, investigated Palmyra Island and found no one there. That expedition evidently resulted from Governor Frear's suggestion that an investigation be made to ascertain whether there were any indications of British occupancy of the island.

Other witnesses testified to having made brief visits to Palmyra in 1924, 1930, 1935, 1936, 1937 and 1938, and found no humans there. None of those visitors claimed title to the island and their visits did not interrupt the possession of the owners.

The evidence adduced at the prior hearing showed a complete chain of title from Bent and Wilkinson to Henry E. Cooper. It was so stipulated at the prior hearing (R. 119).

It is not surprising that after the lapse of so many years, testimony of living witnesses is not obtainable to show what, if anything, the several successive claimants of ownership did upon the island. But ancient deeds constitute evidence of possession of the land by the owner.

■ Upon familiar principles of equity a party who invokes the process of the court in an effort to challenge a title which for years has been considered settled by all having any interest in the question of title is not given the benefit of the loss of evidence which has occurred through the lapse of years. A claimant who has delayed for many years in the assertion of his claim is hardly in a position to benefit by the inability of a respondent to produce more conclusive evidence as to what was done two or three generations ago. The court can see no reason for not applying these familiar principles simply because the petitioner in this case is the government.

■ Under the local Torrens Act the possession of a Land Court Certificate is a continuing possession of the land itself.

Section 5046 of the Revised Laws of Hawaii 1935, provides that "No title, right or interest in, to or across registered land in derogation of that of the registered owner shall be acquired by prescription or adverse possession". Thus is the possession of registered land protected. It cannot be interrupted by an adverse entry.

There is not a scintilla of evidence that the Hawaiian monarchy, the Provisional Government or the Republic of Hawaii at any time claimed that Palmyra was public land. There is no record evidence of any kind that either of those governments ever regarded Palmyra as public property. Uncontradicted evidence shows that the claim of private ownership of the island had been continuously maintained through the years to the knowledge of the Department of State, the Department of the Interior and officers of the United States navy as well as of the prior governments of Hawaii..

Governor Frear, who was one of the commissioners appointed by the President pursuant to the resolution of annexation of 1898 who drafted the Organic Act of Hawaii, reporting to the Secretary of the Interior by letter dated January 10, 1912, said, "The private title to this island has been from a date several years before 1862 to the present time in citizens of Hawaii and one Hawaiian corporation, successive-ly, the records of the successive transfers being in the record and probate offices in this City. The present owner is Hon. H. E. Cooper, a Circuit Judge of the First Circuit of this Territory and formerly Secretary of the Territory. Thus the title to the island both as to sovereignty and private ownership would seem to be American without question." Not until this case was commenced was the private title questioned.

■ What constitutes sufficient possession to establish title by adverse possession in litigation between individuals depends largely on the character, condition and situation of the land involved. Evidence required with reference to city property might be radically different from that required concerning agricultural or grazing land situated in a sparsely settled community. It is apprehended that similar considerations affect a claim of title by lost grant against the state.

The island of Palmyra is situated about a thousand miles from the main islands of the Hawaiian group. Its owner could not be expected to reside there. The island could not be reached except by sea-going craft. It is a unit in and of itself and its identity is well known. The successive possessions have been maintained under color of title adversely to the true owner, assuming that there was one, and without interruption by any paramount claim.

Assuming, then, that when Palmyra was annexed by the Hawaiian government in 1862 the island became public land, how can the circumstances which followed be reconciled?

At that time the public lands in Hawaii were subject to sale and conveyance. Civil Code of Hawaii of 1859, § 42.

■ Bearing in mind that in support of a claim of title by lost grant it need not be shown that a grant had actually issued and has been lost, but only that the facts and circumstances were such as to show the legal possibility of the issuance of a grant. Territory of Hawaii v. Hutchinson Sugar Plantation Co., 9 Cir., 272 F. 856.

■ I believe and so sold that the evidence in this case is not only entirely con-

sistent with but can reasonably and logically be accounted for only upon the presumption that a grant issued to Bent and Wilkinson by which the Hawaiian government parted with its title.

The next point made by the respondent arises under the averments in the petition that the Land Court of Hawaii was without jurisdiction to enter a decree registering the title to Palmyra to Henry E. Cooper, and that the claims of the respondents as based on that decree constitute a cloud upon petitioner's title, the prayer of the petition being that the decree of the Land Court be declared invalid and held for naught. In other words, that the alleged cloud be removed. The respondents contend that the Land Court had jurisdiction to consider and determine the application of Henry E. Cooper to register his title and that the decree was valid and binding.

The precise point sought to be made by the petitioner evidently is based on its contention that since the ownership of the island passed to the United States by the terms of the resolution of annexation of 1898, the petitioner's title was not affected by the decree of the Land Court.

The determination of this question hinges on the force and effect of the disclaimer of interest which was filed in the Land Court proceeding by the Territory of Hawaii.

Section 5025 of the Revised Laws of Hawaii 1935, provides that if the land sought to be registered borders on the shore or if it otherwise appears that the Territory may have a claim adverse to that of the applicant, notice of the application shall be served on the Attorney General. The Territory was therefore properly made a party to the proceeding and the Attorney General properly made an appearance.

Section 91 or the Hawaiian Organic Act, 48 U.S.C.A. § 511, provides that the public property ceded to the United States "shall be and remain in the possession, use, and control of the government of the Territory of Hawaii, and shall be maintained, managed, and cared for by it, at its own, expense, until otherwise provided for by Congress, or taken for the uses and purposes of the United States by direction of the President or of the governor of Hawaii."

Section 73 of the Organic Act, 48 U.S. C.A. §§ 663–677, authorizes the Territory to sell, exchange and lease the public lands, with certain limitations as to area and value and the terms of leases, and provides that all funds arising from the sale, lease or other disposal of public land shall be appropriated to the uses and purposes of the Territory.

■ Those provisions did not create a mere agency on the part of the Territory to act for the Federal Government. They constitute a delegation of legislative power from Congress to the Territory. Conveyances made pursuant to the power are not conveyances of the United States of America executed by the territorial officers as agents, but they are conveyances of and by the Territory in its own right pursuant to the Acts of Congress. This follows from the fact that the Territory has complete possession and control of the public lands with the power to dispose of them.

■ From this it follows that when the Territory is properly cited in on a Land Court application it is the duty of the Attorney General to oppose the application if there be ground for opposition, or to file a disclaimer if there be no ground for opposition. That would be incidental to the powers of management and control conferred on the Territory by the Organic Act.

■ The island of Palmyra had not been set aside for federal use and therefore, assuming that it was public land, it remained in the use, control and management of the Territory.

■ The United States cannot of course be sued without its consent. The application of Henry E. Cooper was not a suit against the United States. Even if Palmyra was public land at the time the application was filed in the Land Court the use and control of the island was vested in the Territory and the United States was not a necessary party to the proceedings, though it could have intervened if it had a claim to assert.

■ In view of these circumstances I hold that the disclaimer filed by the Ter-

ritory in the Land Court was a legal and valid act done pursuant to the power expressly conferred on the Territory by the Organic Act. It was binding not only on the Territory which exercised the power but upon the United States of America which delegated the power to the Territory.

■ .The next point urged by the respondents the Fullard-Leos is that they are entitled to protection as bona fide purchasers, they having paid Mr. Cooper fifteen thousand dollars for the property in 1922 without any notice or knowledge that the Federal Government claimed title to the island. The burden of proof on this point is upon the respondents, but as the facts are undisputed it becomes a question of law.

There is no dispute as to the purchase by the Fullard-Leos from Mr. Cooper. Nor is there any evidence tending to show that at the time of the purchase and the payment of the consideration the Fullard-Leos had any notice of a claim of title on the part of the United States. On the contrary, that Government had evidently accepted the report of Governor Frear as an authoritative statement concerning Palmyra and, as above stated, had subsequently negotiated with the Fullard-Leos, as owners, for a lease of the property.

■ It is well settled that the Federal Government is not estopped by the mere laches or non-action of its officers. But it is likewise well settled that where, while the laches is continuing, the rights of a bona fide purchaser have intervened, equity will protect them.

This applies to actions brought by the Government as well as to those brought by individuals. Protection of the rights of a bona fide purchaser deprives the antagonist not only of relief but of the adverse right itself.

■ If Palmyra was public land of the Republic of Hawaii the United States Government at any time subsequent to 1898 could have asserted the claim of title which it now seeks to assert.

I therefore hold that the petitioner is estopped by its laches from asserting its claim of title against the respondents who pur-

chased from Mr. Cooper and paid a valuable consideration without notice of any adverse claim.

Upon . the facts found and conclusions reached as hereinabove stated I hold that the respondents are entitled to prevail upon each and all of the defenses above mentioned.

A decree quieting the title to the island of Palmyra in the respondents in accordance with their respective interests therein will be entered.