374 So.2d 212 (1979)
Mrs. Juanita GIBSON
v.
STATE LAND COMMISSIONER, Board of Supervisors and Board of School Trustees of Lauderdale County, et al.
No. 50834.
Supreme Court of Mississippi.
February 28, 1979.
As Corrected On Denial Of Rehearing September 5, 1979.
Bourdeaux & Jones, Thomas D. Bourdeaux, Corey & Corey, Lyle V. Corey, Meridian, for appellant.
William E. Ready, Meridian, A.F. Summer, Atty. Gen., by William James Cole, III, Special Asst. Atty. Gen., Jackson, William B. Compton, Meridian, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
ROBERTSON, Presiding Justice, for the Court:
Complainant, Mrs. Juanita Gibson, filed her bill of Complaint in the Chancery Court of Lauderdale County for confirmation of title to 100 acres of 16th section land. She named as defendants the State Land Commissioner *213 of Mississippi, the Board of Supervisors and Board of School Trustees of Lauderdale County, private individuals, "and any and all persons having or claiming any interest, legal or equitable" in the described property.
A Special Demurrer was interposed by the State Land Commissioner as to the 80 acres of 16th section land not covered by deed, and both General and Special Demurrers were interposed by the Board of Supervisors of Lauderdale County and the Lauderdale County Board of Education. The principal ground of the special demurrers was that the complainant's deraignment of title was defective as to the 80 acres because it did not show a divestiture out of the sovereign and, therefore, established "no color of title or claim of title or right upon which the statutory presumption complainant relies upon can be made ..."
The court reserved its ruling on the demurrers and heard testimony. When both sides rested, the court sustained the demurrers and dismissed the bill of complaint.
These are the principal questions involved on this appeal:
I. Was the trust which was created by the State of Georgia in Sixteenth Section School Lands of such nature that the lands could never be sold, and for that reason, was the Mississippi Legislature's Act of February 25, 1854, invalid?
II. Can the doctrine of "Presumption of Lost Grant" be invoked against the Sovereign?
III. Does the twenty-five year statute of adverse possession, Section 29-3-7 of the Mississippi Code of 1972, have any application in this case?
IV. Was the Chancellor correct in sustaining the objection to the offer of introduction into evidence of the deeds to other lands in the same section as the land involved here?
On April 24, 1802, the State of Georgia ceded to the United States lands which later became the States of Mississippi and Alabama, with this proviso: that each 16th section of land would be set aside in trust for school purposes. When Mississippi became a State, its first Constitution adopted August 15, 1817, contained this provision:
"[N]o lands granted for the use of such township schools, shall ever be sold by any authority in this state." Miss.Const. Art. VI, Sect. 20 (1817).
However, when this Constitution was replaced by the 1832 Constitution, the new Constitution contained no reference to 16th section lands, nor did any subsequent Constitution until that of 1890.
On May 19, 1852, the United States Congress passed an Act, providing:
"That the Legislature of the State of Mississippi shall be, and is hereby authorized to sell and convey in fee-simple, or lease, for a term of years, as the said legislature may deem best, all or any part of the lands heretofore reserved and appropriated by Congress for the use of schools within said State, and to invest the money arising from said sales, as said legislature may direct, for the use and support of schools within the several townships and districts of county for which they were originally reserved and set apart, and for no other use, or purpose whatsoever: Provided, Said lands or any part thereof, shall, in no case be sold or leased without the consent of the inhabitants of such township or district to be obtained in such manner as the legislature of said State may by law direct: And provided further, That in all cases, the money arising from the sales of lands within a particular township and district, shall be appropriated to the use of schools within that township and district." 10 Stat. Chapter 35.
On February 25, 1854, the Mississippi Legislature passed an Act to authorize the Board of School Commissioners of Lauderdale County, Mississippi, to sell the school lands in that county. Chapter 331, Laws of Mississippi, 1854, provided:
"Section 1. Be it enacted by the Legislature of the State of Mississippi, That it shall be the duty of the Board of School *214 Commissioners of the county of Lauderdale, to advertise for sale, for forty days, in three or more public places in said county, and in some public newspaper, all the sections or parts of sections of all lands that have been donated by Congress to the State of Mississippi for school purposes, which lie in said county and remain unsold; and after the expiration of the said forty days, if the petition hereinafter mentioned shall not be presented, the President of the Board of School Commissioners shall proceed to sell, in front of the Court-House door, at public auction, to the highest bidder, on a credit of twelve months, all the school lands remaining unsold in said county; but if a majority of the inhabitants of any township in which any school land proposed to be sold is situated, shall petition the President of the Board of School Commissioners not to sell any section, or any part of a section, the same shall not be sold, otherwise the consent of the township to the sale shall be presumed."
Pursuant to the authority contained in this Act, Joseph Lowry, President of the Board of School Commissioners of Lauderdale County, on behalf of the Board, executed a deed, conveying the NE 1/4 of Section 16, Township 8, Range 14 East, Lauderdale County, to O.S. Mason, he being described in the deed as the "highest last and best bidder and purchaser of the aforesaid land for the sum of $100.00." Twenty acres (S 1/2 of the SE 1/4 of the NE 1/4) of this 160 acres was included in the Gibson bill of complaint to confirm title. Eighty acres (E 1/2 of the SE 1/4 of Section 16, Township 8, Range 14 East) was also included in the bill of complaint to confirm title.
The deraignment of title in the bill of complaint as to this 80 acres says:
"There does not appear of record in Lauderdale County, Mississippi, any instrument of conveyance as to this property out of the President of the Board of School Commissioners. The first item appearing of record is a [quitclaim] deed executed by C.J. McLemore conveying the SE 1/4 of this section to James M. Trussell, which deed is dated February 14, 1859, ..."
B.C. Crenshaw, the complainant's grandfather, acquired 60 acres (NE 1/4 of SE 1/4, and S 1/2 of SE 1/4 of NE 1/4 of Sec. 16, T. 8, R. 14 East) from W.R. Hand and Esta Hand by deed, dated November 14, 1904. On November 19, 1907, H.W. Hand and wife, R.J. Hand, executed a deed of conveyance to B.C. Crenshaw conveying 40 acres (SE 1/4 of SE 1/4 of Section 16, Township 8, Range 14 East).
On November 2, 1966, three of Mrs. Gibson's aunts, Lillie, Minnie and Janie Crenshaw, executed a warranty deed to her conveying "all of our right, title and interest" in the 100 acres.

I.
The first error assigned is stated in the form of a question:
Was the trust which was created by the State of Georgia in Sixteenth Section School Lands of such nature that the lands could never be sold, and for that reason, was the Legislative Act of February 25, 1854, invalid?
This Court, in W.B. Jones v. Madison County, 72 Miss. 777, 18 So. 87 (1895), after discussing the United States Congress' Act of May 19, 1852, said:
"We are therefore of opinion that the grant of sixteenth sections is in perpetuity to the inhabitants of the respective townships; that the legal title to the land is in the state, in trust for the inhabitants of the respective townships in which the land is situated, and that a sale of the land, pursuant to the act of the legislature, is valid and binding on the inhabitants of the township." 72 Miss. at 800, 18 So. at 91. (Emphasis added).
This ruling in Jones has been consistently followed by this Court ever since.
In Alabama v. Schmidt, 232 U.S. 168, 34 S.Ct. 301, 58 L.Ed. 555 (1913), the Supreme Court of the United States again stated its position:
"As long ago as 1856 it was decided `the trusts created by these compacts relate to *215 a subject certainly of universal interest, but of municipal concern, over which the power of the state is plenary and exclusive;' and it was held that the state of Michigan could sell its school lands without the consent of Congress. Cooper v. Roberts, 18 How. 173, 15 L.Ed. 338. This decision adverted to the fact that it had been usual for Congress to authorize the sale of lands if the state should desire it, but suggested that it was unnecessary (which, indeed, followed from what was decided) and thus met the further argument here pressed that a qualified permission to sell was given to Alabama by a much later act of March 2, 1827, chap. 59, 4 Stat. at L. 237. It also disposes of other forms of the same contention, that the state law impairs the obligation of its contract, or involves a breach of trust, supposing that such positions are open to the state to take. [Citations omitted]. The gift to the state is absolute, although, no doubt, as said in Cooper v. Roberts, `there is a sacred obligation imposed on its public faith.' But that obligation is honorary, like the one discussed in Conley v. Ballinger, 216 U.S. 84, 30 S.Ct. 224, 54 L.Ed. 393, and even in honor would not be broken by a sale and substitution of a fund, as in that case; a course, we believe, that has not been uncommon among the states. See further Stuart v. Easton, 170 U.S. 383, 394, 18 S.Ct. 650, 42 L.Ed. 1078, 1082.
.....
"The result of Cooper v. Roberts and of what we have said is that the state has authority to subject this land in its hands to the ordinary incidents of other titles in the state, and that the judgment must be affirmed. Northern P.R. Co. v. Ely, 197 U.S. 1, 8, 25 S.Ct. 302, 49 L.Ed. 639, 642." 232 U.S. at 173-74, 34 S.Ct. at 302-03, 58 L.Ed. at 558. (Emphasis added).
The Act of the Mississippi Legislature (Chapter 331, Laws of Mississippi, 1854) approved February 25, 1854, authorizing the Board of School Commissioners for the County of Lauderdale to sell the school lands in said County, was a valid Act of the Legislature, and the deed from Joseph Lowry, President of the Board of School Commissioners of Lauderdale County, executed on August 8, 1854, pursuant to the provisions of said Act, effectively divested title out of the County and State, and vested a good, legal and equitable title in O.S. Mason, to the NE 1/4 of Section 16, Township 8, Range 14 East, Lauderdale County. The trial court should not have sustained demurrers to the bill of complaint and should not have dismissed the bill of complaint as to the 20 acres described as the S 1/2 of the SE 1/4 of the NE 1/4 of Section 16, Township 8, Range 14 East, Lauderdale County.

II. and III.
The next questions raised on this appeal are:
Can the doctrine of "Presumption of Lost Grant" be invoked against the Sovereign? Does the twenty-five year statute of adverse possession, Section 29-3-7 of the Mississippi Code of 1972, have any application in this case?
The close relationship between "Presumption of Lost Grant" and "Adverse Possession" is mentioned by this Court in Itawamba County v. Sheffield, 195 Miss. 359, 13 So.2d 649 (1943):
"The fiction or presumption of a lost grant is inherent in the doctrine of prescriptive title by immemorial possession and use. It is but the reflected light from the principle itself and when an adverse possession is shown, there is no need to seek the aid of such presumption." 195 Miss. at 367, 13 So.2d at 651.
In Volume 2A C.J.S. Adverse Possession § 317, page 107, it is stated:
"The doctrine of adverse possession or prescription is said to be based on the presumption of a lost grant, ..."
Both Presumption of Lost Grant and Adverse Possession are also closely linked to the principle of a limitation of actions. Statutes of limitation have the beneficent purpose of stabilizing and quieting land titles and generally barring the assertion of stale claims.
*216 However, Mississippi has a specific constitutional provision that declares:
"Statutes of limitation in civil causes shall not run against the State, or any subdivision or municipal corporation thereof." Section 104, Mississippi Constitution of 1890.
The apparent reason for this provision is that the body politic should not suffer because of the neglect or procrastination of its public servants in promptly asserting and protecting the rights and interests of the general public in civil matters.
Inasmuch as the doctrines of Presumption of Lost Grant and Adverse Possession are so indissolubly linked, Assignments of Error II and III will be discussed together.
Appellant Gibson contends that the doctrine of Presumption of Lost Grant should be applied against the state because of long adverse possession by private individuals of public trust lands (16th Section lands), even though admittedly it took a specific Act of Congress and a subsequent specific Act of the Mississippi Legislature to authorize any sale or conveyance of these public trust lands set aside specifically for the use and benefit of the public schools of the state. In support of her position, Mrs. Gibson cites the cases of Caruth v. Gillespie, et al., 109 Miss. 679, 68 So. 927 (1915), and Jones v. Gulf Refining Company, 202 Miss. 705, 32 So.2d 435, 34 So.2d 735 (1947). These cases are clearly distinguishable from the case at bar.
Caruth was an ordinary adverse possession case between private individuals not involving sixteenth section (public trust) lands. Caruth brought suit to confirm his title to 150 acres of land in Pike County, claiming under a patent from the State issued in 1907, the state's title being based on a sale to it on June 3, 1872, for delinquent 1871 taxes. Gillespie, et al., claimed that, because of long continued adverse possession and because the Pike County Court-house burned in 1882 and all land records before 1882 had been destroyed by fire, it should be presumed that the state had parted with any title it had prior to the 1907 forfeited tax land patent. The 1884 and 1890 deeds, conveying title to appellees' predecessor in title, under which the appellees claim, were both of record in the office of the Chancery Clerk of Pike County. The appellees claimed as heirs at law of Eli Varnado, deceased, who died while he and his family were living in their home on these lands. The Chancellor dismissed Caruth's original bill of complaint to confirm title based on the forfeited tax land patent, and granted the prayer of the cross-bill confirming title in the appellees and cancelling Caruth's claim of title.
This Court affirmed, saying, among other things:
"The testimony in this case is consistent with the presumption of law that the state in 1875 in some way, either by a sale under the abatement act or by a conveyance of its title derived from the sale shown to have been made to the state in June, 1872, parted with its title. It is clearly shown that but for the principle embedded in our organic law, providing that the statute of limitations shall not run against the state, appellees would have a perfect title by adverse possession." 109 Miss. at 687, 68 So. at 930.
In Jones v. Gulf Refining Company, supra, which did involve sixteenth section lands, this Court first summarized the facts:
"On July 4, 1881, S. Gwin, the Auditor of Public Accounts, executed and delivered to A.B. Jones a forfeited tax land patent to the lands here in question, the grant being of the described land as a `tract of land', there being no words of limitation of the estate granted to the effect that it was an unexpired lease, but the grant was to the grantee and `his heirs and assigns forever'. It recited that the land `was sold on the 10th day of May 1875 for the taxes due the State'. The Auditor was authorized and empowered to execute the patent under the express provisions of Section 566, Code 1880.
"According to the allegations of the bill, the grantee under said patent went at once in the exclusive possession and actual occupancy of the land and he and his successors in title, appellant being the *217 ultimate of such successors, have been in the continuous, actual occupancy of said land claiming the fee-simple title thereto for a period of more than sixty years." 202 Miss. at 708, 32 So.2d at 436.
In reversing and remanding this case, this Court said:
"In order that the forfeited tax-land patent shall have been good to convey a fee-simple title, a title of that grade must have passed out of the state into the hands of a private person before January 1, 1874, else it would not have been assessable and subject to the tax sale as a fee-simple title on May 10, 1875 .. .
"... Thus the presumption arises that before January 1, 1874 the sovereign had parted with the fee-simple title, as under the Code of 1871 it could have done, and the presumption is further that it was a fee-simple title, not a lease, inasmuch as the patent aforesaid conveyed a title in fee simple forever and not a lease." 202 Miss. at 709, 32 So.2d at 436.
Thus in Jones there was a forfeited tax land patent containing no words of limitation and with the recited grant being to the grantee and "his heirs and assigns forever." Jones based his claim of right on this patent and also asserted that it constituted color of title in fee simple.
In the case at bar, Mrs. Gibson has no grant, deed or patent, nor any written evidence of any kind from the state on which to base her claim. She only has adverse possession to support her argument that she is entitled to "a presumption of lost grant."
The special Act of the Legislature approved February 25, 1854, authorizing the Board of School Commissioners of Lauderdale County to sell school lands in the county upon 40 days published notice contained this caveat:
"[B]ut if a majority of the inhabitants of any township in which any school land proposed to be sold is situated, shall petition the President of the Board of School Commissioners not to sell any section, or any part of a section, the same shall not be sold, otherwise the consent of the township to the sale shall be presumed." Chapter 331, Laws of Mississippi, 1854. (Emphasis added).
The reason that there was no grant, deed or patent to the 80 acres in question (E 1/2 of SE 1/4 of Section 16, T.8, R. 14 E.) could very well be because a petition against the sale was filed by "a majority of the inhabitants" of the township in which this 80 acres was situated. This reasoning is supported by the fact that other portions of this particular 16th Section surrounding this 80 acres were promptly sold under the special provisions of the Act of 1854. The NE 1/4 of Section 16, Township 8, Range 14 East, was sold at public auction on July 17, 1854, to O.S. Mason, and the deed executed on August 9, 1854, was promptly filed for record on August 23, 1854. In our opinion, there should be no presumption of lost grant under the facts of this case.
There being no presumption of lost grant and no written instrument evidencing a claim or color of title in Mrs. Gibson or her predecessors in title to this 80 acres of 16th Section land, Section 29-3-7, Mississippi Code Annotated (1972), (the 25-year adverse possession statute), would not be applicable and could not be invoked against the State.
If there be any conflict between Section 104, Mississippi Constitution of 1890, which provides:
"Statutes of limitation in civil causes shall not run against the State, or any subdivision or municipal corporation thereof."
and Section 29-3-7 (we do not think there is any), there would be no question as to which takes precedence.
Our latest pronouncement on this subject was made in Newell v. State, 308 So.2d 71 (Miss. 1975):
"We believe no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield." 308 So.2d at 77.

*218 IV.
The chancellor was also correct in sustaining "the objection to the offer of introduction into evidence of the deeds to other (16th section) lands ...".
The decree sustaining the demurrers as to the 80 acres is affirmed, but the decree sustaining demurrers and dismissing the bill of complaint as to the 20 acres is reversed and this cause remanded to the lower court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.